722 P.2d 346

**Jeffrey S. BARTLETT and May Broadcasting Company, dba KGUN–TV, Petitioners,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF PIMA; Hon. Jack T. Arnold, a Judge thereof, Respondents,**

**and**

**Edwin H. CUNNINGHAM and Jane Doe Cunningham, husband and wife; Walter Edwards Burke and Jane Doe Burke, husband and wife, Real Parties in Interest.**

**No. 2 CA–SA 0332.**

Court of Appeals of Arizona, Division 2, Department A.

Jan. 16, 1986.

Review Denied May 28, 1986.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by D. Michael Mandig, Tucson, for petitioners.

Johnson, Dowdall & Price by Michael L. Price, Tucson, for real parties in interest.

## OPINION

HOWARD, Presiding Judge.

■ In this special action, we are called upon to determine the validity and applicability of an asserted qualified journalist's privilege to resist a subpoena in a civil action to which the journalist is not a party. The petition was filed following the order of the trial court requiring production of a videotape which had been subpoenaed pursuant to A.R.S. § 12–2214. Because the petition raises issues of first impression and of statewide importance, and because the petitioners have no remedy by way of appeal, we accept jurisdiction.

Petitioner May Broadcasting Company (KGUN) operates a television station in Tucson, Arizona. Petitioner Bartlett is an employee of the station. Respondents Cunningham and Burke were involved in an automobile accident in Tucson on January 16, 1985, which shortly thereafter resulted in litigation. A videotape of the accident victim and the scene was made by KGUN personnel and broadcast on its nightly news program. Upon a verbal request, counsel for the Cunninghams was permitted to view the tape at the station's library. On July 3, 1985, Bartlett was served as custodian of records for KGUN with a subpoena duces tecum requesting production of a copy of the tape. The subpoena was accompanied by the affidavit of counsel for the Cunninghams pursuant to A.R.S. § 12–2214, which provides:

"A. A subpoena for the attendance of a witness or for production of documentary evidence issued in a civil or criminal proceeding and directed to a person engaged in gathering, reporting, writing, editing, publishing or broadcasting news to the public, and which relates to matters within these news activities, shall have attached to it an affidavit of a person with a direct interest in the matters sought which states all of the following:

1. Each item of documentary and evidentiary information sought from the person subpoenaed.

2. That the affiant or his representative has attempted to obtain each item of information from all other available sources, specifying which items the affiant has been unable to obtain.

3. The identity of the other sources from which the affiant or his representative has attempted to obtain the information.

4. That the information sought is relevant and material to the affiant's cause of action or defense.

5. That the information sought is not protected by any lawful privilege.

6. That the subpoena is not intended to interfere with the gathering, writing, editing, publishing, broadcasting and disseminating of news to the public as protected by the first amendment, Constitution of the United States, or by article II, section 6, Constitution of Arizona.

B. A subpoena served on a person described in subsection A without the required affidavit attached to it has no effect.

C. If the affidavit is controverted or a motion to quash the subpoena or for a protective order is filed by the person subpoenaed, the command of the subpoena shall be postponed until a hearing is held and an order is entered by the court. After the hearing the command of the subpoena shall be carried out in accordance with the order of the court.

D. This section does not apply to a subpoena for the attendance of a witness or the production of documentary evidence issued by or on behalf of a grand jury or a magistrate during an investigative criminal proceeding."

The affidavit alleged, inter alia, that the videotape was "a unique pictorial record" showing the position of the vehicles and the extent of damage, and that counsel had attempted to obtain similar photographs

from the newspapers but had been told that none existed.

This affidavit was controverted by the affidavit of petitioner Bartlett, which alleged that the information was not available solely through KGUN but could be obtained from witnesses at the scene and accident reports. The affidavit further alleged that the information was irrelevant, overly broad and immaterial, and that it was privileged under the First Amendment to the United States Constitution, article II, section 6, of the Arizona Constitution, and A.R.S. § 12–2237.

When Bartlett failed to respond to the subpoena, the Cunninghams initially commenced contempt proceedings against the petitioners. Then, recognizing that the statute held the command of the subpoena in abeyance pending a hearing upon the filing of a controverting affidavit, the trial court vacated the contempt hearing and set the matter for hearing pursuant to A.R.S. § 12–2214(C). At that hearing, no evidence was presented other than the videotape, which the court viewed. The bulk of the hearing was devoted to argument of counsel concerning who had the burden of proof and what evidence was required to be presented to the court.

Counsel for the Cunninghams avowed to the court that the videotape was unique in that it was the only pictorial representation of the accident victim immediately after the collision while paramedics were administering to her, and that the tape depicted measurable skid marks not otherwise photographed or measured at the time of the accident. He further avowed that equivalent evidence could not be found in the numerous depositions of witnesses which had been taken, nor in any still photographs or videotapes made by other television stations.

The petitioners argued that the videotape was protected by a qualified privilege under the First Amendment and the Arizona Constitution, and that, absent a showing of compelling need for the information and an inability to obtain the same or its equivalent from a non-protected source, petition-

ers could not be required to produce the tape. The petitioners further argued that the Cunninghams had failed to meet their burden of proof, apparently taking the position that they were obligated to present to the court all of the evidence previously gained, including the other videotapes and the depositions, before the court could find that a compelling need for the KGUN videotape existed. Additionally, petitioners argued that the Cunninghams had failed to prove that the information on the videotape could not be obtained from eyewitness testimony, and objected to the Cunninghams' asserted need for pictures of the skid marks in the absence of any testimony from an accident reconstructionist.

Having viewed only the KGUN tape and heard argument, the court ordered KGUN to produce the tape, reasoning as follows:

"THE COURT: Well, anyone who has ever tried an open intersection case or tried a personal injury case knows that they rely on that old Chinese proverb that one picture is worth a thousand words. I think under the view that I have had of that tape, I find that it quite probably has evidence that is material and relevant and is probative of the issue in this case that Mr. Price has and I would think that tape is so unique, that counsel couldn't obtain it anywhere else.

It is a picture of a woman in extreme distress with a neck brace on and shows a picture of her damaged automobile sitting in the middle of the intersection with skid marks. It shows the hurry and everything else that was taking place that evening. I think it would greatly aid a trier of the fact, whether it be a court or a jury, in assessing what the severity of the incident was.

I think that balancing that against the burden to Channel 9, the Court would rule that Channel 9 must produce that tape and all expenses for said production and so forth have to be borne by Mr. Price."

 In this special action, petitioners have again urged the arguments made below, that is, that they are constitutionally

protected by a qualified privilege against disclosure, and that the respondents have failed to meet their burden of demonstrating a compelling need for the videotape in order to overcome this privilege. The constitutional argument is predicated upon petitioners' reading of *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and subsequent cases considering its applicability in other contexts. In *Branzburg,* the Supreme Court held that the First Amendment did not create in journalists a privilege to refuse to appear and answer relevant and material questions posed during a good faith grand jury investigation. Although noting that "news gathering is not without its First Amendment protections," and indicating that the press was entitled to protection against "[o]fficial harrassment," the plurality opinion did not expound upon the situations in which the press might be able to claim a privilege against disclosure or testimony. 408 U.S. at 708–709, 92 S.Ct. at 2670, 33 L.Ed.2d at 655. The concurring opinion of Justice Powell indicated, however, that:

> "The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional way of adjudicating such questions. (footnote omitted.)

> In short, the courts will be available to newsmen under circumstances where legitimate First Amendment interests require protection." 408 U.S. at 711, 92 S.Ct. at 2671, 33 L.Ed.2d at 656.

Petitioners argue that *Branzburg* and its progeny confer on members of the news media a qualified constitutional privilege against providing information in civil litigation unless the party seeking the information demonstrates a compelling need for information which goes to the heart of the litigant's claim or defense and which is possessed only by members of the media. While it is true that the cases cited by petitioners have indeed found such a privilege, that finding was in each case premised on the existence of a factor which we believe was critical to the *Branzburg* court and which is decidedly absent here. As the Court succinctly stated: "The heart of the claim is that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information." 408 U.S. at 682, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. Thus the claim of privilege depends, in the first instance, upon the existence of a confidential relationship such that compliance with a subpoena would either result in disclosure of confidential information or sources or would seriously interfere with the news gathering and editorial process.

The cases cited by petitioners all involve either claims based on confidential information or sources, *DeRoburt v. Gannett Co., Inc.,* 507 F.Supp. 880 (D.Hawaii 1981); *Forbes Magazine v. Occidental Petroleum Corp.,* 494 F.Supp. 780 (S.D.N.Y.1980), or a refusal to testify as to personal observations based on alleged interference with newsgathering, *United States v. Steelhammer,* 539 F.2d 373 (4th Cir.1976), or a refusal to permit, through a reporter's testimony, an examination of "the reportorial and editorial processes." *Consumers Union of United States, Inc. v. American Medical Association,* 495 F.Supp. 582, 586 (S.D.N.Y.1980). Such important considerations are conspicuously absent here. No claim is made, nor could there be, that the Cunninghams seek disclosure of either confidential information or confidential sources, nor is the testimony of any reporter sought as to either his personal observations of the events or the process of putting together the published story. The sole item requested is a videotape copy of a news report previously broadcast to the public and reviewed upon request by counsel for the Cunninghams. Even assuming the validity of a qualified journalist's privilege, the record provides an insufficient basis for its assertion by petitioners in this case.

■ Petitioners also claim that the Cunninghams have failed to meet the requirements of A.R.S. § 12–2214 and that the subpoena should therefore be quashed. We reject initially petitioner's contention that the statute codifies such a constitutional privilege, that the statute requires a showing of compelling need and that the person cannot "make his case" without the information sought before disclosure will be required. The journalist's privilege in Arizona is found in A.R.S. § 12–2237, which protects against disclosure of confidential sources and was enacted prior to the Supreme Court's decision in *Branzburg*. Had the legislature intended to expand the privilege, we believe it would have done so by amending A.R.S. § 12–2237 rather than by passing a separate statute under a different article. Further, the language of A.R.S. § 12–2214 itself belies petitioners' contentions. By its terms, the statute applies regardless of whether a privilege is asserted or found to exist. Under petitioners' construction, a heavy burden of proof would have to be met even before disclosure of admittedly non-privileged matter. If this was the intention of the legislature in enacting the statute, it is not apparent from the language used, and we see no reason to read such a meaning into the statute.

■ In our view, petitioners are correct in their assertion that it was the intention of the legislature in enacting A.R.S. § 12–2214 to protect the media from being turned into "litigation consultants" by lawyers who, through the use of a subpoena, are able to enlist the aid of the media in preparing their cases. To that end, the statute requires the party seeking the information to make a showing as to the relevance and materiality of the information and his efforts and inability to obtain it from other sources. If the affidavit is controverted by the party resisting disclosure, a hearing must be held and the court must determine whether the required showing has been made. The questions presented by this special action are (1) who

has the burden of proof and (2) what is the required showing?

■ Clearly, the initial burden rests with the party seeking the information to demonstrate compliance with the requirements of A.R.S. § 12–2214(A)(1) through (6). For the reasons stated above we do not believe, however, that a showing of compelling need or that the party cannot make his case without the information is required. The party must identify in reasonable detail in his affidavit the information sought, the efforts made to obtain it and from what sources. A.R.S. § 12–2214(A)(1) through (3). The provisions of subsections (A)(4) through (6) would appear to require no more than the affiant's avowal, unless controverted.

Once the party seeking the information has complied with the requirements of subsection (A), the burden shifts to the party opposing the subpoena to controvert the allegations of the affidavit and to set forth the bases therefor. It is not sufficient, for example, merely to allege that the same information can be obtained elsewhere; rather the affidavit must set forth the manner in which previous efforts were deficient or other specific sources from which the information is available. Nor do we believe that the statute requires the presentation to and review by the court of every other source investigated. To hold otherwise would place a heavy and unwarranted burden on both the party seeking the information and the court. In this case, for example, the Cunninghams were not required to produce for the court's inspection every deposition taken of the accident witnesses or the videotapes obtained from other stations. It was sufficient for counsel to avow that the witnesses had in fact been deposed and the videotapes reviewed, and that neither provided the same information as was available on the KGUN videotape. If petitioners were unconvinced by this avowal, the burden was upon them to review the depositions and the videotapes and to point out to the court where equivalent information could be found. Having failed

to do so, they were not entitled to relief from the subpoena.

■ A concomitant question is whether, as alleged by petitioners, information equivalent to that contained in the videotape could be provided by the testimony of eyewitnesses. Quoting the proverb that a picture is worth a thousand words, the trial judge apparently concluded that pictorial representations are by their nature unique, and we think this conclusion is supportable under the statute. Subsection (A) distinguishes between "documentary and evidentiary information," but does not define either term. However, the language of the statute referring to a "subpoena for the attendance of a witness or for production of documentary evidence" would suggest that the intention was to distinguish between tangible items of evidence and witnesses' testimony. Construed in this manner, it was reasonable for the trial court to conclude that the testimony of eyewitnesses was not the same as a pictorial representation of either the victim's distress or the skid marks.

For the reasons set forth above, we hold that the videotape sought by the real parties in interest was not constitutionally protected from disclosure, that they made the required showing for production under A.R.S. § 12–2214, and that the trial court properly ordered the petitioners to produce the tape. Accordingly, we deny relief.

HATHAWAY, C.J., and LACAGNINA, J., concur.