825 P.2d 971

**Dary MATERA, Petitioner,**

**v.**

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, the Honorable Thomas Dunevant, III, a judge thereof, Respondent Judge,**

**The STATE of Arizona and Carolyn Walker, Real Parties in Interest.**

No. 1 CA–SA 91–228.

Court of Appeals of Arizona, Division 1, Department C.

Jan. 23, 1992.

Review Denied March 17, 1992.

Brown & Bain, P.A. by Daniel C. Barr, Grant A. Koppelman, Phoenix, for petitioner.

Miller & Miller, Ltd. by Murray Miller, Richard K. Miller, Phoenix, for real parties in interest.

## OPINION

GRANT, Presiding Judge.

█ This special action arose following the trial court's order refusing to quash a subpoena served on petitioner Dary Matera (Matera). We accepted jurisdiction because the case presents a novel question concerning an Arizona statute that has not been fully construed or interpreted by our appellate courts, A.R.S. § 12–2214.[1] The issues presented are purely questions of law, and are of great interest and importance statewide. *University of Arizona Health Sciences Center v. Superior Court,* 136 Ariz. 579, 581, 667 P.2d 1294, 1296 (1983). Petitioner has no adequate plain and speedy remedy by direct appeal, and thus special action jurisdiction is appropriate. Rule 1,

Arizona Rules of Special Action, 17B A.R.S.

### Facts and Procedural History

The present case arose in the aftermath of the "AzScam" sting operation. Carolyn Walker (Walker), the real party in interest in this action, was one of several Arizona legislators indicted following an undercover operation engineered by Arizona law enforcement agencies. Walker, one of the targets of the sting, is now a defendant in a criminal case and is involved in a civil RICO action, both resulting directly from the undercover efforts.

Matera is an author currently involved in writing a book about Joseph Stedino, the primary undercover figure in the sting. Walker learned of Matera's work during a deposition of Stedino, and subsequently subpoenaed Matera's notes and other documents collected during Matera's preparation of the book.

Matera asked the trial court to quash the subpoena. The trial court, by minute entry order, denied the motion to quash and Matera filed this special action. By written order, we accepted jurisdiction and denied relief with an opinion to follow. This is that opinion.

### Discussion

█ Matera claims the trial court abused its discretion in denying the motion to quash. Matera relies on A.R.S. § 12–2214 (the "Media Subpoena Law") as well as the Arizona and United States Constitutions.

A.R.S. § 12–2214(A) states in relevant part:

A subpoena for the attendance of a witness or for production of documentary evidence issued in a civil or criminal proceeding and directed to a person engaged in gathering, reporting, writing, editing, publishing or broadcasting news to the public, and which relates to matters with-

---

1. In the only Arizona case addressing § 12–2214, *Bartlett v. Superior Court,* 150 Ariz. 178, 722 P.2d 346 (App.1986), Division Two of this court was faced with a case where the statute obviously applied. The only statutory questions presented in *Bartlett* concerned the burden of proof and the required showing under the affidavit requirement of the statute. *Id.* at 183, 722 P.2d at 351. Thus the question we address in this opinion—the scope and application of the statute as an initial matter—was not an issue in *Bartlett.*

in these news activities, shall have attached to it an affidavit of a person with a direct interest in the matters sought . . .

Subsection B of the statute states that "[a] subpoena served on a person described in Subsection A without the required affidavit attached to it has no effect."

In the present case, Walker did not comply with the affidavit requirement of the Media Subpoena Law, contending that compliance was unnecessary because Matera was not a "person engaged in the gathering, reporting, writing, editing, publishing or broadcasting news to the public." The trial court correctly focused on this language as dispositive of the motion to quash. If Matera fits the description contained in the statute, the subpoena is of no effect and should have been quashed. Conversely, if Matera's efforts do not bring him within the ambit of the statute, as the trial judge held, the subpoena is valid and Matera must produce the subpoenaed materials.

█ Our primary task is to give effect to legislative intent. *Carrow Co. v. Lusby,* 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990); *Alexander v. Fund Manager,* 166 Ariz. 589, 591, 804 P.2d 122, 124 (App.1990). In attempting to divine legislative intent, we must give the language of the statute its plain and ordinary meaning. *Lusby,* 167 Ariz. at 20, 804 P.2d at 749. The trial judge held that the plain meaning of the language of § 12–2214 militates against application of the statute to Matera. Walker argues, and the trial judge agreed, that the statute should apply to members of the "news media" as that term is commonly understood. We agree.

"News" has been defined as "a report of recent events; material reported in a newspaper or news periodical or on a newscast; matter that is newsworthy." Webster's Ninth New Collegiate Dictionary 796 (1984). Applying this definition to § 12–2214, we conclude that Matera was not actively engaged in the gathering, reporting, etc. of "news."

We note that the legislative history of the Media Subpoena Law, while not abundant, provides some guidance. For example, the title of § 12–2214 was originally "Third party subpoenas," but was changed before passage to the current title, "Requirements for subpoena of media witnesses." The legislative history also reveals that when the committees of the senate and house of representatives were considering the Media Subpoena Law, the only witnesses who testified concerning the law were employees of Arizona's daily newspapers and television news stations. These facts suggest that § 12–2214 was intended to apply to persons who gather and disseminate news on an ongoing basis as part of the organized, traditional, mass media.

█ We hold that the statute's application is limited to persons engaged in the gathering and dissemination of news to the public on a regular basis. Our examination of the language of the statute and the legislative history leads us to conclude that the purpose of the Media Subpoena Law is to protect members of the media from burdensome subpoenas and broad discovery "fishing expeditions" that would interfere with the ongoing business of gathering and reporting news to the public. The statute balances the needs of media personnel against the needs of litigants, tipping the balance in favor of interference with the process of newsgathering only upon a showing of need, proven by affidavit. The statute is not a "shield" law or broad protection for newsgatherers, as Matera argues. We hold that the statute was not designed to protect the information collected, but rather was designed to aid a specific class of persons—members of the media—in performing their jobs free from the inconvenience of being used as surrogate investigators for private litigants. *See Bartlett v. Superior Court,* 150 Ariz. 178, 183, 722 P.2d 346, 351 (App.1986).

█ Matera's second argument focuses on the "qualified reporter's privilege" recognized by the United States Supreme Court in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) and its progeny. See Marcus, *The Reporter's Privilege: An Analysis of the Common*

*Law, Branzburg v. Hayes, and Recent Statutory Developments*, 25 Ariz.L.Rev. 815 (1983) for a comprehensive critical analysis of *Branzburg*. Relying on two federal appellate court decisions, *von Bulow v. von Bulow*, 811 F.2d 136 (2d Cir. 1987) and *Silkwood v. Kerr–McGee Corp.*, 563 F.2d 433 (10th Cir.1977), Matera argues that the information he gathered while preparing his book is protected by the constitutional privilege.

The *von Bulow* court held that information gathered by an author for potential publication in book form may, under certain circumstances, be protected by the First Amendment and therefore not subject to subpoena in a civil action where the author was not a party to the lawsuit. 811 F.2d at 144–145. However, the *von Bulow* court refused to apply the privilege to the facts before it, since the author had no intent to publish the information at the time it was gathered. *Id.* at 145–146.

*Silkwood* applied the privilege to information gathered in preparation for the production of a fact-based motion picture. The court held that the information and sources were protected under the First Amendment privilege, unless the party requesting the information could satisfy the court that their need for the information outweighed the reporter/newsgatherer's need for confidentiality. 563 F.2d at 438.

■ In part, these cases stand for the basic proposition that under *Branzburg* the states and the federal courts have the freedom to create, expand or restrict protection for publishers as they see fit. In fact, the *Branzburg* Court expressly stated this notion:

> At the federal level, Congress has freedom to determine whether a statutory newsman's privilege is necessary and desirable and to fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned and, equally important, to refashion those rules as experience from time to time may dictate. There is also merit in

leaving state legislatures free, within First Amendment limits, to fashion their own standards in light of the conditions and problems with respect to the relations between law enforcement officials and press in their own areas. It goes without saying, of course, that we are powerless to bar state courts from responding in their own way and construing their own constitutions so as to recognize a newsman's privilege, either qualified or absolute.

408 U.S. at 706, 92 S.Ct. at 2669.

■ The *Branzburg* Court also noted that several states already had reporter's privilege statutes in place at the time of its decision. 408 U.S. at 689 n. 27, 92 S.Ct. at 2660 n. 27. Arizona was one of the states whose "press shield law" was enacted well before the invitation to do so was expressed by the Supreme Court in *Branzburg*. The constitutional privilege afforded to reporters in Arizona is codified at A.R.S. § 12–2237, which reads as follows:

> A person engaged in newspaper, radio, television or reportorial work, or connected with or employed by a newspaper, radio or television station, shall not be compelled to testify or disclose in a legal proceeding or trial or any proceeding whatever, or before any jury, inquisitorial body or commission, or before a committee of the legislature, or elsewhere, the source of information procured or obtained by him for publication in a newspaper or for broadcasting over a radio or television station with which he was associated or by which he is employed.

This statute has been part of the laws of Arizona since 1937, remaining virtually unchanged.[2] As is apparent from the language of § 12–2237, the statute protects members of the media from being compelled to testify about or otherwise disclose confidential sources utilized during the newsgathering process. The statute does not protect all the activities of would-be

---

**2.** In 1960 the statute was amended to include reporters working for the radio and television media.

publishers or newsgatherers, nor does it protect any and all information gathered.

Both *Silkwood* and *von Bulow* held that "[o]n rare occasions the journalist's privilege has been invoked successfully by persons who are not journalists in the traditional sense of that term." *von Bulow*, 811 F.2d at 143; *see Silkwood*, 563 F.2d at 437. Various federal courts have also held that the privilege may be invoked to protect nonconfidential sources and information. *E.g., von Bulow*, 811 F.2d at 145; *United States v. Blanton*, 534 F.Supp. 295 (S.D.Fla.1982), *aff'd*, 730 .F.2d 1425 (11th Cir.1984). Matera urges us to expand the privilege in Arizona along the lines of these cases, so that the privilege would apply to anyone who is engaged in gathering and publishing information which is of topical and widespread interest. We refuse to do so.

In a case raising similar issues, Division Two of this court rejected the argument that the privilege recognized in *Branzburg* and its progeny protects either information or activities of newsgatherers. *Bartlett v. Superior Court*, 150 Ariz. 178, 722 P.2d 346 (App.1986). The court stated that the application of the privilege is appropriate only when the requisite confidentiality is present:

> As the [*Branzburg*] Court succinctly stated: "The heart of the claim is that the burden on news gathering resulting from compelling reporters to disclose confidential information outweighs any public interest in obtaining the information." 408 U.S. at 682, 92 S.Ct. at 2656, 33 L.Ed.2d at 639. Thus the claim of privilege depends, in the first instance, upon the existence of a confidential relationship such that compliance with a subpoena would either result in disclosure of confidential information or sources or would seriously undermine the news gathering and editorial process.

150 Ariz. at 182, 722 P.2d at 351.

We agree with this assessment of the reporter's privilege as it exists in Arizona. We note in passing that even the cases relied on by Matera involved a claim of confidentiality of information and sources.

*von Bulow*, 811 F.2d at 146; *Silkwood*, 563 F.2d at 435. Matera has not, and cannot, claim that the subpoena in this case would cause him to reveal confidential sources or information, nor would the subpoena impede the gathering of information. It is only those limited situations that are protected by Arizona's qualified reporter's privilege as codified at § 12–2237, and we refuse to extend such a privilege to other circumstances. We therefore reject Matera's claim that he is protected by the constitutional privilege.

We affirm the trial court's decision denying the motion to quash. We vacate the stay previously ordered by this court in this case, and we remand for further proceedings in accordance with this opinion.

EUBANK and KLEINSCHMIDT, JJ., concur.