IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO


CARONDELET HEALTH NETWORK )
dba ST. JOSEPH'S HOSPITAL, an )
Arizona corporation, )
         )
               Petitioner, )
         )
          v. )      2 CA-SA 2009-0019
         )      DEPARTMENT B
HON. MICHAEL MILLER, Judge of the )
Superior Court of the State of Arizona, in )   O P I N I O N
and for the County of Pima, )
         )
               Respondent, )
         )
           and )
         )
MARY K. ATTEBERRY, individually, as )
the surviving wife of DUDLEY E. )
ATTEBERRY, deceased, and on behalf )
of JOEL T. ATTEBERRY, DANIEL L. )
ATTEBERRY, NATHANAEL S. )
ATTEBERRY, and TIMOTHY L. )
ATTEBERRY, the surviving children of )
DUDLEY E. ATTEBERRY, deceased, )
and all other statutory beneficiaries of )
DUDLEY E. ATTEBERRY, deceased; )
KEUN HYUK NO and EUN JOO NO, )
husband and wife; TRAVMED USA, )
INC., a North Carolina corporation; and )
INPATIENT MEDICAL )
CONSULTANTS, P.L.L.C., an Arizona )
professional limited liability company, )
         )
          Real Parties in Interest. )
         )

SPECIAL ACTION PROCEEDING

Pima County Cause No. C 20080195

JURISDICTION ACCEPTED; RELIEF DENIED

---

Mesch, Clark & Rothschild, P.C.
  By Richard Davis, Scott H. Gan, and Gary J. Cohen                    Tucson
                                                              Attorneys for Petitioner

Law Office of Carter Morey
  By Gregory G. Wasley                                                 Tucson
                                                        Attorneys for Real Party in
                                                         Interest Mary K. Atteberry

---

V Á S Q U E Z, Judge.

¶1          In this special action, petitioner Carondelet Health Network challenges the respondent judge's order requiring Carondelet to disclose the name, address, and telephone number of a hospital patient who, while sharing a room with fellow patient Dudley Atteberry, witnessed events that preceded Dudley's death. Carondelet claims the physician-patient privilege bars disclosure of the witness's identity.

¶2          "When a trial court orders disclosures that a party or witness believes to be protected by a privilege, appeal provides no remedy. Special action is the proper means to seek relief." *Church of Jesus Christ of Latter-Day Saints v. Superior Court*, 159 Ariz. 24, 25-26, 764 P.2d 759, 760-61 (App. 1988); *see also* Ariz. R. P. Spec. Actions 1(a). Because the issue presented is "of statewide importance [and] . . . likely to arise again," we accept

2

jurisdiction of this special action. *State ex rel. Romley v. Martin*, 203 Ariz. 46, ¶ 4, 49 P.3d 1142, 1143 (App. 2002), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003). We review the respondent judge's disclosure order for an abuse of discretion. *See* Ariz. R. P. Spec. Actions 3(c).

## Facts and Procedural Background

**¶3** Real party in interest Mary Atteberry is Dudley's widow. Mary brought the underlying action for medical malpractice and wrongful death against Carondelet and other individual and corporate defendants. She alleges their negligence in failing to protect and properly care for Dudley while he was a patient at St. Joseph's Hospital resulted in the injuries and subsequent complications that led to his death on May 28, 2007.

**¶4** In the early morning hours of May 16, Dudley sustained a fractured hip after falling in his hospital room. Later that morning, his hospital roommate told Mary that Dudley had fallen twice in the night and that, each time, the roommate had notified Dudley's nurse. Although Mary thus spoke directly with the roommate on May 16, she did not obtain the man's name or any contact information.

**¶5** Mary asserts the hospital records produced in discovery did not mention the first fall or either of the roommate's reports to Dudley's nurse. Mary thus submitted a written interrogatory asking Carondelet for "the name, address and telephone number of the patient who shared the hospital room with Dudley E. Atteberry on the evening of May 15, 2007, and the early morning hours of May 16, 2007." Claiming the identity of Dudley's

3

roommate was protected by the physician-patient privilege, Carondelet refused to provide the information, and Mary moved to compel the discovery. The respondent judge granted Mary's motion, ordered Carondelet to disclose the identifying information under seal, and directed counsel not to reveal the patient's name to anyone else "without prior permission from the Court or express, written permission by the patient." This petition for special action followed.

**Discussion**

¶6        The physician-patient privilege, codified in Arizona at A.R.S. §§ 12-2235 and 12-2292,[1] exists to foster a patient's "full and frank disclosure of medical history and symptoms" to his or her physician in order to facilitate the best possible medical treatment. *Lewin v. Jackson*, 108 Ariz. 27, 31, 492 P.2d 406, 410 (1972). The privilege reflects a societal judgment that people should feel free "to seek treatment undeterred by fear that a

---

[1]Section 12-2235, entitled "Doctor and patient," provides in pertinent part: "In a civil action a physician or surgeon shall not, without the consent of his patient, . . . be examined as to any communication made by his patient with reference to any physical or mental disease or disorder . . . or as to any such knowledge obtained by personal examination of the patient."

Section 12-2292, entitled "Confidentiality of medical records and payment records," provides in pertinent part: "A. Unless otherwise provided by law, all medical records and . . . the information contained in medical records . . . are privileged and confidential. A health care provider may only disclose . . . a patient's medical records . . . as authorized by state or federal law or written authorization signed by the patient . . . ." Even before the enactment of § 12-2292 in 1995, *see* 1995 Ariz. Sess. Laws, ch. 225, § 1, this court had held hospital records containing information that would be privileged under § 12-2235 were similarly covered by the physician-patient privilege. *Tucson Med. Center Inc. v. Rowles*, 21 Ariz. App. 424, 427, 520 P.2d 518, 521 (1974).

4

private physical condition will become a matter of public discussion." Joseph M. Livermore et al., *Arizona Law of Evidence* § 501.1, at 123 (4th ed. 2000).

¶7         In contrast to other exclusionary rules barring the admission of evidence deemed "unreliable, likely to be misused, confusing or time consuming," privileges tend to exclude evidence that "is often reliable, valuable, and relevant proof." *Id.* at 120. Consequently, because they "impede the truth-finding function of the courts," privilege statutes are strictly construed. *Catrone v. Miles*, 215 Ariz. 446, ¶ 10, 160 P.3d 1204, 1209 (App. 2007), *quoting Church of Jesus Christ of Latter-Day Saints*, 159 Ariz. at 29, 764 P.2d at 764.

¶8         Whether and to what extent a privilege exists is a question of law. *Id.*; *see also Ledvina v. Cerasani*, 213 Ariz. 569, ¶ 3, 146 P.3d 70, 72 (App. 2006); *Blazek v. Superior Court*, 177 Ariz. 535, 537, 869 P.2d 509, 511 (App. 1994). As with any issue of law, our review is de novo. *See Ledvina*, 213 Ariz. 569, ¶ 3, 146 P.3d at 72.

¶9         As authority for invoking the physician-patient privilege here, Carondelet relies principally on our supreme court's statement in *Ziegler v. Superior Court*, 131 Ariz. 250, 251, 640 P.2d 181, 182 (1982) (*Ziegler I*), that disclosing the identities of certain former patients of the defendants in that case would have violated the privilege. Despite the breadth of the court's language, the scope of its actual holding is narrower, tethered necessarily to the facts of the case before it.

¶10 In the underlying action in *Ziegler*, the plaintiff had sued two doctors for surgically implanting a pacemaker she did not need; she had also sued the hospital where the doctors practiced for failing to supervise and control the medical services provided in its facility. *See Ziegler v. Superior Court*, 134 Ariz. 390, 391, 656 P.2d 1251, 1252 (App. 1982) (*Ziegler II*). A central issue in the case was whether the hospital knew or should have known that the doctors had implanted unnecessary pacemakers in other patients as well, and the trial court had previously ordered disclosure of the medical charts of twenty-four such patients, with their names and other identifying information removed. *Id.* At a pretrial medical liability review panel hearing in the case, expert witnesses for the plaintiff had "testified that 20 of the 24 medical charts represented medical malpractice by reason of unnecessary implantation of pacemakers." *Id.* at 391-92, 656 P.2d at 1252-53.

¶11 Because the medical records of those nonparty patients in *Ziegler* had already been produced to counsel with the patients' names and addresses excised, subsequent disclosure of their identities would have potentially linked each patient to his or her records and necessarily revealed private information about each individual's medical condition and treatment. Indeed, and in contrast to this case, that was the purpose for which the patients' identities were sought—because their medical conditions and the treatment they had received from the defendant doctors constituted relevant evidence supporting Ziegler's claims against the hospital.

6

¶12 Despite the literal language of *Ziegler I*, we do not read the case to hold that the physician-patient privilege creates a blanket prohibition against the disclosure of a patient's identity, as Carondelet asserts, because that was not the legal issue presented by the facts before the court. And, even while broadly declaring the patients' identities protected in that case, the court simultaneously acknowledged the purpose of the physician-patient privilege and the sort of information the privilege is intended to protect: "The former patients are entitled to be left to their privacy secure in the belief that *their confidences, treatment, and records* are protected from disclosure." *Ziegler*, 131 Ariz. at 251, 640 P.2d at 182 (emphasis added).

¶13 Thus, the actual holding of *Ziegler I* is narrower than some of its language might suggest, if excerpted and read out of context. *Ziegler I* stands only for the proposition that the physician-patient privilege protects a patient's identity when its revelation would inevitably expose information about the patient's medical history, condition, or treatment, and potentially reveal information the patient had divulged in confidence.[2] We therefore reject Carondelet's interpretation of *Ziegler I* and decline to apply the court's literal language to the decidedly different facts presented here.

---

[2]Our interpretation is consistent with the statutory language creating the privilege, which prevents questioning a physician in a civil action about "any *communication* made by his patient *with reference to any physical or mental disease or disorder* . . . or as to any such knowledge obtained by personal examination of the patient." § 12-2235 (emphasis added). Self-evidently, a patient's name, address, and contact information are not "communication[s] . . . with reference to any physical or mental disease or disorder." *Id.*

¶14 Our interpretation of *Ziegler I* is both informed and buttressed by later developments in the case. In *Ziegler II*, a successive special action following the remand ordered in *Ziegler I*, this court ruled the plaintiff was entitled to review and potentially use as evidence the charts of twenty-four former patients. There, we held that such charts could be used to support her claim of negligent supervision by the hospital, provided the patients' identities and privacy were protected. *See Ziegler*, 134 Ariz. at 393, 395, 656 P.2d at 1254, 1256. In the process, we discussed the competing interests at stake and weighed the public interest in hospitals adequately supervising members of their medical staffs against the privacy interests of individual patients who were not parties to the litigation:

> [M]edical records of other patients who might have had unnecessary pacemaker implantations are relevant to the notice issue. It is thus readily apparent that a blanket prohibition against examination and use against the hospital of such records would result in an injustice. We believe that the order of this court, set forth above, adequately safeguards the privacy of former patients not parties to this litigation and preserves the spirit of the physician-patient privilege. At the same time it furthers the public interest by insuring that hospitals will more scrupulously supervise the members of their medical staffs and prevent exposure of future patients to medical incompetence. We cannot see how any patient would be inhibited in confiding in his doctor when there is no risk of humiliation and embarrassment, and no invasion of the patient's privacy.

*Id.* at 394, 656 P.2d at 1255.

¶15 In *Ziegler II*, we also cited and discussed cases from other jurisdictions that had addressed similar issues. One of two from which we quoted with approval was *Rudnick v. Superior Court*, 523 P.2d 643 (Cal. 1974). There, the California Supreme Court discussed

8

the criteria the trial court should use in determining on remand whether the defendant drug manufacturers, who had received certain confidential adverse-drug-reaction reports from physicians, could invoke the physician-patient privilege on behalf of the patients in refusing to produce the physicians' reports of their patients' adverse reactions to the manufacturers' product. 523 P.2d at 651. Anticipating a question it foresaw arising upon remand, the court offered this "guidance" to the trial court:

> "The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments." *City & County of S.F. v. Superior Court* (1951) 37 Cal.2d 227, 232, 231 P.2d 26, 28. Therefore if the disclosure of the patient's name reveals nothing of any communication concerning the patient's ailments, disclosure of the patient's name does not violate the privilege. If, however, disclosure of the patient's name inevitably in the context of such disclosure reveals the confidential information, namely the ailments, then such disclosure violates the privilege. Conversely if the disclosure reveals the ailments but not the patient's identity, then such disclosure would appear not to violate the privilege.

523 P.2d 643, 650 n.13 (citations omitted). Our ruling in *Ziegler II* reflected our agreement with the California court's analysis in *Rudnick*, and the supreme court denied review of our decision.[3]

**¶16**        In contrast to the facts in *Ziegler*, the parties here are not interested in the confidential contents of the unnamed patient's medical records. Instead, because he was an eyewitness to events that happened to occur in a hospital room, Mary seeks to discover what

---

[3]We are inclined to agree with Mary that the twenty-six-year coexistence of *Ziegler I* and *Ziegler II* in our jurisprudence supports the conclusion that they do not conflict.

9

information he can provide about what he witnessed. At oral argument, Carondelet argued that disclosing the witness's identity would be tantamount to revealing privileged information about his medical condition and treatment because the inevitable inquiry into his ability to perceive and recall events would necessarily raise questions about his physical or mental condition and what medications he may have taken.

¶17 In this respect, however, the patient-as-witness is no differently situated than any other eyewitness to events that later become the subject of litigation. Should he ultimately testify, the parties would be entitled to inquire into any factors or conditions that could have affected the witness's sensory perceptions at the time or his subsequent ability to recall what he observed. To the extent such an inquiry might delve into private, sensitive, or privileged information that the witness does not want revealed, we would trust the trial court to fashion such protections as it deems appropriate under the circumstances of this specific case.

¶18 In our view, requiring Carondelet to disclose the identity of this witness, under the restrictive conditions the respondent judge has imposed, does not run afoul of *Ziegler I* nor violate the protections the physician-patient privilege affords for confidential medical communications. Nor does it thwart the purposes behind the privilege. We simply do not find plausible Carondelet's assertion at oral argument that our holding today will discourage persons from seeking necessary medical care, from visiting doctors or being admitted to hospitals, or from divulging personal information necessary to receive appropriate care in

10

those settings. As we observed in *Hospital Corporation of America v. Superior Court*, 157 Ariz. 210, 212, 755 P.2d 1198, 1200 (App. 1988), statutory privileges are strictly construed because they "contravene the principle that the public has a right to every person's evidence." The respondent judge's order strikes an appropriate balance between Mary's right to the evidence Dudley's roommate may have, while protecting his privacy and the confidentiality of his personal medical information to the fullest extent possible.

¶19 Although we accept jurisdiction of this special action, we find no abuse of the respondent judge's discretion, *see* Ariz. R. P. Spec. Actions 3, and therefore deny relief.


_____
GARYE L. VÁSQUEZ, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge

11