IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SAMUEL C. JOHNSON, III, *Petitioner*,

*v.*

THE HONORABLE KAREN L. O'CONNOR, Judge
of the SUPERIOR COURT OF THE STATE OF ARIZONA,
in and for the County of MARICOPA, *Respondent Judge*,

STATE OF ARIZONA, *Real Party in Interest.*

PSYCHOLOGICAL COUNSELING SERVICES, LTD., *Petitioner*,

*v.*

THE HONORABLE KAREN L. O'CONNOR, Judge
of the SUPERIOR COURT OF THE STATE OF ARIZONA,
in and for the County of MARICOPA, *Respondent Judge*,

STATE OF ARIZONA, *Real Party in Interest.*

Nos. 1 CA-SA 14-0035; 1 CA-SA 14-0036 (Consolidated)
FILED 06-06-2014

Petition for Special Action from the Superior Court in Maricopa County
No. CR2013-004928-001
The Honorable Karen L. O'Connor, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED; REMANDED**

COUNSEL

Piccarreta Davis, PC, Tucson
By Michael L. Piccarreta, Jefferson Keenan
*Counsel for Petitioner*

Osborn Maledon, PA, Phoenix
By Larry A. Hammond, Anne M. Chapman, Anna H. Finn

Snell & Wilmer, LLP, Phoenix
By Brett W. Johnson, Sara J. Agne
*Counsel for Petitioner Psychological Counseling Services, LTD.*

Maricopa County Attorney's Office, Phoenix
By E. Catherine Leisch, Andrea L. Kever
*Counsel for Real Party in Interest*

---

**OPINION**

Judge Randall M. Howe delivered the opinion of the Court, in which Presiding Judge John C. Gemmill specially concurred and Judge Kent E. Cattani concurred in part, dissented in part.

---

**H O W E**, Judge

¶1        Psychological Counseling Services, Ltd., ("PCS") located in Arizona, provided counseling to Samuel C. Johnson. The Maricopa County Superior Court has issued a summons under the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings ("the Uniform Act" or "the Act"), codified in A.R.S. §§ 13–4091 to –4096, ordering PCS's custodian of records ("custodian") to testify and to produce Johnson's treatment records in a Wisconsin criminal proceeding against Johnson. PCS and Johnson seek review of the superior court's order. They make various arguments that the superior court had no authority to issue the summons, but argue primarily that the superior court erred in issuing it without first determining whether the treatment records were protected from disclosure under Arizona's medical records privacy statutes and psychologist-client privilege.

¶2        We hold that the superior court properly issued the summons and correctly declined to consider whether the treatment

2

records are privileged or protected by medical record privacy laws. Whether evidence sought under the Uniform Act is privileged or protected from disclosure is a determination for the state court requesting the summons, not for the state court issuing the summons.

## FACTS AND PROCEDURAL HISTORY

¶3 During Johnson's treatment with PCS, Johnson made statements that led the treating psychologists to reasonably believe that a minor in Wisconsin had been abused. PCS reported those statements to authorities, as A.R.S. § 13–3620 requires.

¶4 In February 2012, once criminal proceedings against Johnson had begun in Wisconsin, the Racine County Circuit Court for the State of Wisconsin issued a certification pursuant to the Uniform Act to secure documents and a witness for Johnson's trial. The documents requested included Johnsons medical records, including those records that involved group therapy sessions. On behalf of the Wisconsin court, the State of Arizona presented the certification to the Maricopa County Superior Court and asked it to issue a summons ordering PCS's custodian to appear, testify, and produce documents in the Wisconsin court. The superior court ordered the custodian to appear before it and show cause why a summons should not issue. Under A.R.S. § 13–4092(B), the superior court was required to issue the summons if it found after a hearing that the custodian was a "material and necessary" witness, that compelling his attendance and testimony would not cause an "undue hardship," and that the laws of Wisconsin would protect the custodian from arrest or service of process. It also ordered PCS to outline the medical records at issue and any privilege concerns for an in camera review. The court later declared the issue moot, however, after finding no reason to send the records or custodian to Wisconsin because no hearing or trial date had been set.

¶5 On July 19, 2013, the circuit court sent a second certification stating that a criminal prosecution against Johnson was pending and again requesting that the custodian appear, testify, and produce documents for a trial set for January 6, 2014. The certification noted that PCS's custodian could send Johnson's treatment records in lieu of personally appearing. After receiving the certification, the superior court again issued an order to show cause. The superior court vacated its order, however after it learned that the January 6 trial date had been vacated.

¶6 On December 17, 2013, the circuit court issued a third certificate, repeating its request for the appearance of PCS's custodian

with Johnson's treatment records — or the submission of the records in lieu of the custodian's appearance — at a hearing scheduled for March 26, 2014. The hearing's purpose was to review the records requested. The superior court issued a third order to show cause.

¶7          Johnson and PCS made several arguments why the court should not issue a summons. They argued that (1) the superior court was collaterally estopped from considering the certification because another superior court had denied the earlier certification for the lack of a trial date; (2) the current certification did not set forth a trial date and the case was currently pending review before the Wisconsin Supreme Court; and (3) the Uniform Act does not allow for subpoenas of documents. They also argued that, if the court issued the summons, the court must determine whether the requested records were protected under the psychologist-client privilege, because if the records were protected, the custodian would not be a material witness under the Uniform Act.

¶8          The State objected to Johnson's involvement in the matter, arguing that Johnson had no standing to object to the issuance of the summons. The State noted that although Johnson could object to the admission of the records based on psychologist-client privilege, the venue to resolve that issue was Wisconsin.

¶9          The court applied the Uniform Act and found that PCS's custodian was a material and necessary witness and that the custodian would be protected from arrest and service of process in Wisconsin. The court also found, however, sending the custodian to Wisconsin would be an undue hardship because the court was uncertain whether the hearing would occur, given that a proceeding was occurring in the Wisconsin Supreme Court.

¶10         The State moved for reconsideration, arguing that the March 26 hearing was still set to occur. The State attached a letter from a Wisconsin circuit court judge explaining that the March hearing would occur and that he would review the requested documents in camera. PCS and Johnson opposed this motion, arguing that because a trial date still had not been set, the request for the custodian did not comply with the Uniform Act. The State moved to strike Johnson's pleading, repeating its argument that Johnson lacked standing in the proceeding.

¶11         The court granted the motion for reconsideration, finding that the certification satisfied the Uniform Act's requirements. The court noted that it had already found that PCS's custodian was a material and

necessary witness and that the custodian would be protected from arrest and service of process, and stated that it would now find that sending the custodian to Wisconsin would not be an undue hardship because the hearing would occur. The court also granted the State's motion to strike Johnson's pleadings in the matter. The court recognized that the Arizona Supreme Court had held in *Tracy v. Superior Court* (*Navajo Nation*), 168 Ariz. 23, 43–44, 810 P.2d 1030, 1050–51 (1991), that matters of professional privileges should be resolved in the state requesting the summons, not in the state issuing the summons. Because Johnson had to pursue the privilege issue in the Wisconsin courts, the superior court ruled that he had no standing to object to the issuance of the summons and that the court had no duty to review the records in camera to determine whether they were privileged. The superior court consequently issued a summons directing the custodian to produce the requested records and appear before the Wisconsin court at the hearing on March 26, 2014, or in lieu of personal appearance, to send the requested documents to the Wisconsin court.

¶12          PCS and Johnson separately petitioned for special action review of this order. This Court consolidated the special actions and stayed the order until further review. This Court heard oral argument on March 26, 2014.

## MOOTNESS

¶13          Because the summons was issued for a March 26 hearing and that date has since passed, whether the superior court erred in issuing it is moot. This Court will nevertheless consider moot issues when they have great public importance or are capable of repetition yet evade review. *Slade v. Schneider*, 212 Ariz. 176, 179 ¶ 15, 129 P.3d 465, 468 (App. 2006). The Uniform Act's application to medical and psychological records is an issue of great public importance. It is also likely to recur in future cases, even in the litigation of this case. This Court learned after argument that Johnson's criminal trial is scheduled for July 14, 2014, and the Racine County Circuit Court may again request the records through the Uniform Act. This Court will therefore consider the issues presented and provide guidance.

## JURISDICTION

¶14          We accept special action jurisdiction. PCS and Johnson have no adequate remedy by appeal because the custodian is ordered to produce documents regarding a client's medical records. Special action

review is appropriate when a party is ordered to disclose what it believes is privileged information. *Blazek v. Superior Court*, 177 Ariz. 535, 536, 869 P.2d 509, 510 (App. 1994).

## DISCUSSION

**¶15** Johnson and PCS present *s*everal arguments that the superior court erred in issuing a summons for PCS's custodian to appear before the Wisconsin court. Because these arguments involve questions of statutory interpretation and application, we review them de novo. *Obregon v. Indus. Comm'n,* 217 Ariz. 612, 614 ¶ 9, 177 P.3d 873, 875 (App. 2008).

**¶16** Arizona adopted the Uniform Act in 1937. *Tracy*, 168 Ariz. at 29, 810 P.2d at 1036. Because the Uniform Act is codified under Title 13 of the Arizona Revised Statutes—Arizona's Criminal Code—the Act must be interpreted "in a manner that will further effective criminal prosecution." *Id.* at 35, 810 P.2d at 1042. The Uniform Act also must be "so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it." A.R.S. § 13–4095.

**¶17** The Uniform Act provides in relevant part that if a judge of a court of record in another state "certifies under the seal of such court that there is a criminal prosecution pending in such court . . . that a person being within this state is a material witness in such prosecution . . . and that his presence will be required," then a superior court judge in the Arizona county in which the person resides "shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for a hearing." A.R.S. § 13–4092(A). At the hearing, the superior court shall accept the certificate as "prima facie evidence of all the facts stated therein" and determine whether (1) the witness is material and necessary, (2) no undue hardship results to the witness by attending and testifying in the prosecution or grand jury investigation, and (3) the laws of the state in which the prosecution is pending will give the witness protection from arrest and the service of civil and criminal process. A.R.S. § 13-4092(B). If those requirements are satisfied, the court shall issue a summons directing the witness to attend and testify in the court where the prosecution is pending. *Id.*

**¶18** Here, the superior court followed this procedure. A judge of a Wisconsin court of record certified that a criminal prosecution was pending and that the testimony of the custodian was material and his presence required, and the superior court consequently held a hearing

pursuant to § 13–4092(A). At the hearing, the superior court determined that the custodian was a material witness, no undue hardship would result from the custodian traveling to Wisconsin to appear and testify, and the custodian would have protection from arrest and service of process. Based on these findings, the superior court issued a summons requiring the custodian to appear before the Wisconsin court or to produce the requested records in lieu of attendance.

¶19        Many of the issues the petitioners raise are easily resolved. Although the parties argued about whether the March 26, 2014, hearing would occur and whether the Wisconsin Supreme Court's consideration of the criminal proceedings removed the circuit court's jurisdiction to conduct the hearing, the Wisconsin circuit court reaffirmed the hearing date after the Wisconsin Supreme Court's review. At the time the superior court considered the certification, the Wisconsin court had set a hearing for March 26, 2014, and that order remained in force.

¶20        We also reject the argument that the superior court was collaterally estopped from considering the December 17, 2013, certification because it had previously found that Wisconsin's February 2012 certification was moot for lack of a trial date. Collateral estoppel—or issue preclusion—precludes a party from "relitigating an issue identical to one he has previously litigated to a determination on the merits in another action." *State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 224 Ariz. 230, 244 ¶ 33, 229 P.3d 242, 256 (App. 2010) (quoting *Hawkins v. State*, 183 Ariz. 100, 103, 900 P.2d 1236, 1239 (App. 1995)). The issues in the two proceedings are not identical, however. The issue in the first proceeding was whether the February 2012 certification was sufficient when no trial date or hearing had been set in Wisconsin. The issue in the current proceeding is whether the December 17, 2013, certification was sufficient when a hearing date of March 26, 2014, had been specified. The superior court's ruling that the February certification was moot for lack of a trial date did not mean that the superior court could not consider a future certification when—as happened here—the Wisconsin court set another date for trial or hearing. The superior court thus was not estopped from considering the December 17 certification.[1]

---

[1]        Johnson and PCS also argue that the "law of the case" doctrine bars the superior court from considering the December 17 certification. But that doctrine is inapplicable for the same reason: the question at issue and the

¶21 Petitioners also argue the superior court could not issue a summons that also served as a subpoena for the production of documents. The Uniform Act makes no mention of producing documents; it only addresses the use of a summons to order witnesses in one state to testify in another state. A.R.S. § 13–4091(3) (Summons is defined as "a subpoena, order, or other notice requiring the appearance of a witness."). All of the states that have confronted this issue—except one—have held that in view of the Uniform Act's purpose and the broad construction of the word "subpoena," the Uniform Act authorizes the issuance of a subpoena duces tecum—a subpoena only for documents. *See Ex parte Simmons,* 668 So.2d 901 (Ala. Crim. App. 1995); *CMI, Inc. v. Ulloa*, 73 So.3d 787 (Fla. Dist. Ct. App. 2011); *Davenport v. State*, 711 S.E.2d 699, 701 (Ga. 2011); *Application of a Grand Jury of State of New York*, 397 N.E.2d 686, 688 (Mass. App. Ct. 1979); *In re Grand Jury Investigation,* 471 A.2d 1141, 1147 (Md. Ct. Spec. App. 1989); *Wyman v. State,* 217 P.3d 572, 605 (Nev. 2009); *but see In re Grothe*, 208 N.E.2d 581, 586 (Ill. App. 1965) (holding that the Uniform Act did not permit production of documents) (overruling by state statute recognized in *Grand Jury Investigation*, 471 A.2d at 1147). No Arizona court has considered this issue. But given the Legislature's direction in § 13–4095 that the Uniform Act should be interpreted uniformly with the same law enacted in other states, and the statutory overruling of the only authority holding that the Uniform Act does not permit a subpoena for the production of documents, we agree the Uniform Act allows such a subpoena.

¶22 The central issue in this case, however, is whether the superior court should have considered the arguments that the records were protected under Arizona's medical records privacy laws and psychologist-client privilege before issuing the subpoena. A review of the applicable statutes and precedent shows that the records may be disclosed without violating Arizona's medical records privacy laws and that whether the records are privileged is for the Wisconsin courts to determine.

¶23 PCS argues that Arizona's medical records privacy statute, A.R.S. § 12–2292, precludes the disclosure of medical records that may be subpoenaed under the Uniform Act. This is not accurate. Of course § 12–2292(A) deems all medical records and payment records privileged and

---

facts are not the same in both proceedings. *See State v. Johnson*, 229 Ariz. 475, 482 ¶ 22, 276 P.3d 544, 551 (App. 2012).

confidential, but also allows disclosure "as authorized by state or federal law." Certain Arizona statutes do require disclosure. Section 12-2294(A) requires a health care provider to disclose medical records or payment records and "the information contained in medical records or payment records . . . when ordered by a court or tribunal of competent jurisdiction," even without the patient's authorization. Section 12–2294.01 requires a health care provider to release medical records pursuant to a subpoena if it is accompanied by a court or tribunal order requiring the release of the records to a third party.

¶24 Under these statutes, PCS is required to disclose the records that pertain to its treatment of Johnson when ordered by a court of competent jurisdiction and must respond to a subpoena requiring the release of the records. The Maricopa County Superior Court is a "court of competent jurisdiction," and the court issued the necessary subpoena under the Uniform Act. Nothing in these privacy statutes precludes PCS from disclosing the medical records.

¶25 Johnson and PCS also maintain that the records are protected from disclosure under A.R.S. § 32–2085(A), which provides that a psychologist may not divulge information that is received "by reason of the confidential nature of the psychologist's practice." The confidential relations and communication between a client and a psychologist are protected on the same basis as relations and communications between a client and an attorney. *Id.* The superior court correctly declined to consider the applicability of the privilege to the records, however, because that is a question for the Wisconsin court to resolve.

¶26 The Arizona Supreme Court considered in *Tracy* whether the Arizona court must determine if evidence sought under the Uniform Act is protected under a constitutional or statutory privilege before issuing a subpoena. 168 Ariz. at 27, 43, 810 P.2d at 1034, 1050. Tracy, who was involved in a land transaction in the Navajo Nation, challenged a superior court order under the Uniform Act to appear and testify before the district court of the Navajo Nation in a criminal trial. *Id.* at 25, 810 P.2d at 1032. Tracy claimed that his testimony would not be material under the Uniform Act because he would invoke his constitutional right against self-incrimination. *Id.* at 27, 810 P.2d at 1034. Accountants and attorneys involved in the matter argued that compelling their attendance before the Navajo court would be an undue hardship because that court "might not recognize the Arizona statutory privileges for attorney-client and accountant-client relationships." *Id.* at 43, 810 P.2d at 1050.

¶27 Our supreme court rejected these arguments. The court held that a witness could not circumvent the Uniform Act by claiming an intent to invoke the privilege against self-incrimination, but must invoke the privilege in the proceeding when called to testify because "the privilege is a matter to be ruled on by the court conducting the trial." *Id.* at 27, 810 P.2d at 1034. The same rule applied to the statutory professional privileges: "Quite simply, the professional privileges are a matter for the requesting jurisdiction to rule on and are not appropriately addressed to the state court issuing the subpoena." *Id.* at 43, 810 P.2d at 1050. The court recognized that the professional privileges are not constitutionally mandated and that "the laws of each jurisdiction may appropriately vary." *Id.* The court further noted that professional privileges "contravene the fundamental principle that 'the public has a right to every man's evidence,' and they are therefore strictly construed and weighed against other policy considerations." *Id.* (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)). For that reason, the supreme court held that "we need not consider whether the courts of the Navajo Nation recognize the attorney-client or accountant-client privileges as those privileges exist in Arizona." *Id.*

¶28 Based on the supreme court's clear directive in *Tracy*, the superior court understandably—and correctly—held that whether Johnson's treatment records are protected under the psychologist-client privilege should be resolved in the Wisconsin court and that Johnson consequently had no standing to object to the issuance of the summons. The psychologist-client privilege is a statutorily created professional privilege, just like the attorney-client and accountant-client privileges. *See Ulibarri v. Superior Court*, 184 Ariz. 382, 387, 909 P.2d 449, 454 (App. 1995). The superior court was bound to apply *Tracy*, and this Court is likewise bound. *See State v. Sullivan*, 205 Ariz. 285, 288 ¶ 15, 69 P.3d 1006, 1009 (App. 2003) ("[W]e are constrained by the decisions of our supreme court and are not permitted 'to overrule, modify, or disregard them.'") (quoting *City of Phoenix v. Leroy Liquors*, 177 Ariz. 375, 378, 868 P.2d 958, 961 (App.1993)).

¶29 PCS argues that *Tracy* is not controlling because it did not address privileges and privacy laws pertaining to medical records. Although the physician-patient and related privileges are undoubtedly important, nothing distinguishes those privileges from the professional privileges *Tracy* addressed. The physician-patient privilege is not constitutionally required and it did not exist at common law. *Benton v. Superior Court*, 182 Ariz. 466, 469, 897 P.2d 1352, 1355 (App. 1994). It has never been an absolute privilege, and it must be strictly construed. *Id.* The

public policy of apprehending and prosecuting criminals often trumps the policy of the privilege. *See* A.R.S. § 13–3620(A) (any of the listed healthcare professionals (including psychologist) must report injury or abuse of minor to appropriate authorities); A.R.S. § 13–3620(K)(1) (no privilege except attorney-client privilege applies in any "[c]ivil or criminal litigation or administrative proceeding in which a minor's neglect, dependency, abuse, child abuse, physical injury or abandonment is an issue"); *State ex rel. Udall v. Superior Court*, 183 Ariz. 462, 466, 904 P.2d 1286, 1290 (App. 1995) (holding that the physician-patient privilege did not shield the medical records of a mother charged with murdering her infant); *Benton,* 182 Ariz. at 468, 897 P.2d at 1354 ("We conclude that the privilege does not apply under the circumstances of this case because the public's interest in protecting victims outweighs the privacy interest reflected in the physician-patient privilege."). This is in keeping with *Tracy*'s recognition that professional privileges are strictly construed and weighed unfavorably against other policy considerations. 168 Ariz. at 43, 810 P.2d at 1050. *Tracy* applies with full force to the psychologist-client privilege.

¶30      Even were *Tracy* not controlling authority, however, it states the correct rule, for several reasons. First, *Tracy*'s holding is consistent with the Uniform Act's purposes. The Uniform Act was enacted to "require[] reciprocal cooperation among jurisdictions for the enforcement of witness attendance orders," and it must be interpreted to "further effective criminal prosecution." *Id.* at 35, 810 P.2d at 1042. Reserving the resolution of privilege issues for the requesting state reduces the procedural hurdles in obtaining a witness or evidence from another state, which increases cooperation among the states and furthers criminal prosecutions.

¶31      Second, *Tracy*'s holding is consistent by analogy with other uniform law statutes. Under the Uniform Criminal Extradition Act, codified in A.R.S. §§ 13–3841 to –3870.02, when a state submits the proper documentation for the extradition of a criminal suspect who resides in Arizona, the documentation "becomes prima facie evidence that the constitutional and statutory requirements for extradition have been met," and the Arizona courts can review only whether (1) the documents on their face are in order, (2) the person has been charged with a crime in the requesting state, (3) the person residing in Arizona is the person named in the documentation, and (4) the person is a fugitive. *Golden v. Dupnik*, 151 Ariz. 227, 229, 726 P.2d 1096, 1098 (App. 1986). Arizona courts cannot inquire into the person's guilt or innocence. A.R.S. § 13–3860.

¶32 The same principles apply to the Uniform Act. Once the requesting state presents the proper documentation under § 13–4092(A), which an Arizona court must accept as "prima facie evidence of all the facts stated therein," the court is limited to determining whether the requirements of § 13–4092(B) are met. The court has no interest in whether and to what extent the testimony or evidence in question is admissible in the requesting state court.

¶33 Third, *Tracy's* holding is consistent with conflict of laws principles that apply to privileges. The Restatement (Second) of Conflicts of Laws § 139(2) (1971) provides that the admission of evidence will be governed by the privilege law of the jurisdiction trying a matter, and not by the privilege law of the state that "has the most significant relationship" with the evidence, "unless there is some special reason why the forum policy favoring admission should not be given effect." Under this principle, the admission of Johnson's treatment records should be governed by Wisconsin—not Arizona—privilege law.

¶34 This does not mean that Johnson's treatment records are not privileged or should be admitted in evidence. This means only that whether and the extent to which the records are privileged is for the Wisconsin court to determine under Wisconsin law. Johnson and PCS will be free to contest that issue in that forum.[2] But Arizona has no authority

---

[2] The dissent expresses concern that once the superior court issues the summons and the medical records are sent to Wisconsin, the records are disclosed and "the information cannot be recalled," which will necessarily defeat any privilege Johnson or the other group therapy patients may have in the medical records. (Dissent, ¶ 48.) But the issuance of the summons does not necessarily disclose the records in a way that vitiates their privilege. The purpose of the March 26, 2014, hearing was for the Racine County Circuit Court to review the records in camera to determine their admissibility. If the court had determined that the records were privileged under Wisconsin law, the records would not have been disclosed, and Johnson's and the other patients' interest in the privacy of those records would have been maintained. Moreover, because the records as they pertain to Johnson's fellow group therapy patients are likely irrelevant to the issues in Johnson's criminal trial, the risk to the fellow group therapy patients that their records would have been disclosed and admitted was likely nonexistent. *See* Wis. Stat. § 904.02 ("Evidence which is not relevant is not admissible."). Moreover, if a health care provider is concerned that medical records will be disclosed merely

under the Uniform Act to withhold the records because they may be privileged under Arizona law.

¶35        Other state courts have considered whether states issuing summons under the Uniform Act can decide privilege issues. Some agree with *Tracy. See, e.g., Codey v. Capital Cities, Am. Broadcasting Corp.*, 626 N.E.2d 636, 642 (N.Y. 1993) ("[T]he courts of the demanding jurisdiction are better qualified [to determine privilege questions], both because of their superior familiarity with local law and because of their direct access to the parties or the facts in the underlying controversy."); *In re Rhode Island Grand Jury Subpoena*, 605 N.E.2d 840, 845 (Mass. 1993) (expressly agreeing with *Tracy*). Two do not. *Holmes v. Winter*, 3 N.E.3d 694, 703–05 (N.Y. 2013); *People v. Marcy*, 283 N.W.2d 754, 757 & n.4 (Mich. App. 1979). But the courts that do not agree do so because they believe that the strength of the privileges involved in those cases outweigh any other interest. *See Holmes*, 3 N.E.3d at 703–05 (a divided court held that New York's interest in its journalist shield law overrode the general rule that privilege issues should be decided by the requesting state); *Marcy*, 283 N.W.2d at 757 & n.4 (polygrapher's privilege is Michigan policy that Michigan courts are bound to enforce; polygrapher may lose polygrapher's license if forced to testify in requesting state). PCS and Johnson make a similar argument, maintaining that Arizona has a strong policy interest in enforcement of its psychologist-client privilege statute because the privilege encourages clients to be honest with their psychologists, which furthers treatment. If the privilege is not honored, PCS and Johnson argue, clients will be deterred from disclosing the information necessary for successful treatment.

¶36        But weighty as this interest is, the Arizona Legislature and appellate courts have determined that the need to protect the victims of crime—particularly minor victims of physical or sexual abuse—weighs even more heavily. *See* A.R.S. § 13–3620; *Benton*, 182 Ariz. at 468, 897 P.2d at 1354. Thus, nothing argues against applying the accepted rule recognized in *Tracy* that privilege issues should be decided in the state that has requested the evidence.

---

by complying with a summons issued under the Uniform Act, it may ask the superior court to seal the records until the receiving state determines whether the records are privileged.

¶37      Johnson and PCS can nevertheless argue to the Wisconsin court that it should honor Arizona's privilege because Johnson and PCS relied on the confidentiality of that privilege in seeking and providing treatment. Although conflict of law principles provide that the privilege law of the state trying a matter controls, a court may deviate from that principle if "countervailing considerations" exist. Restatement (Second) of Conflict of Laws § 139, cmt. d (1971). A court "will be more inclined to give effect to a privilege if it was probably relied on by the parties." *Id.* Johnson and PCS will have authority to argue that Wisconsin should apply Arizona law in deciding whether the treatment records are privileged from disclosure. But the resolution of that argument is for the Wisconsin court.

¶38      The superior court did not err in declining to consider whether the treatment records were privileged under Arizona law in determining whether to issue the summons under the Uniform Act. The superior court made no other error and properly issued the summons.

## CONCLUSION

¶39      For these reasons, we accept jurisdiction but deny relief. The stay previously entered in this case is lifted, and we remand this matter to the superior court for further proceedings consistent with this opinion.

**G E M M I L L**, Judge, Specially Concurring:

¶40      Because I conclude that the Arizona Supreme Court's opinion in *Tracy v. Superior Court (Navajo Nation)*, 168 Ariz. 23, 810 P.2d 1030 (1991), controls our decision in this case, I concur in the denial of special action relief and agree substantially with the reasoning of Judge Howe's opinion.

**C A T T A N I**, Judge, Concurring in Part, Dissenting in Part:

¶41      I agree that the superior court had authority to issue a summons that also served as a subpoena for producing documents. I respectfully disagree, however, with the majority's conclusion that the superior court properly ordered disclosure of records—including group therapy documents—without first determining whether PCS's client

records are privileged or confidential under Arizona law. *See* A.R.S. § 12-2292(A) ("Unless otherwise provided by law, all medical records . . . and the information contained in medical records . . . are privileged and confidential."). In my view, communications that take place in Arizona are subject to Arizona law, and Arizona courts should apply that law before ordering the release of privileged or confidential documents sought for use in a prosecution in another jurisdiction.

¶42        The Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings, as codified in Arizona in A.R.S. §§ 13-4091 to -4096, does not by its terms require disclosure of privileged or confidential communications without first determining whether the law of the jurisdiction in which the communications occurred precludes disclosure. As noted in the majority opinion, other states have in fact chosen to undertake such an analysis before ordering disclosure under the Uniform Act, and there has been no suggestion that this approach violates any provision of the Act.

¶43        Implicitly acknowledging that the Act does not preclude the requested privilege/confidentiality review, the majority bases its ruling on an interpretation of the Arizona Supreme Court's decision in *Tracy v. Superior Court*, 168 Ariz. 23, 810 P.2d 1030 (1991), which the majority concludes has provided a "clear directive" mandating that the question of whether Johnson's treatment records are confidential or protected under the psychologist–client privilege is an issue to be resolved in the Wisconsin courts. But *Tracy* involved only a request under the Act that witnesses be ordered to testify in a foreign jurisdiction notwithstanding their stated intent to assert privileges against self-incrimination or relating to the attorney–client or accountant–client relationship were they to be called to testify in the foreign jurisdiction. *Id.* at 26–27, 810 P.2d at 1033–34. *Tracy* did not involve a request for production of *records*, and it did not address whether records of communications that took place in one jurisdiction should be reviewed for privilege or other confidentiality concerns under the laws of that jurisdiction before being sent to another jurisdiction. *See id.*

¶44        In *Tracy*, the Navajo Nation prosecuted its former Chairman and his son for an alleged conspiracy with several non-Indian businessmen to buy land and then sell it to the Navajo Nation at a profit. *Id.* at 26, 810 P.2d at 1033. Prior to filing a complaint, a special prosecutor recommended that the Navajo Tribal Council enact the Uniform Act, which the Council did. *Id.* A tribal court thereafter issued certificates under the Act seeking to compel the attendance of Tracy and other

Maricopa County residents to testify at trial. *Id.* Tracy was a principal in Tracy Oil & Gas Co., which had optioned a ranch in Northern Arizona for $26,250,000, then sold the ranch several months later to the Navajo Nation for $33,400,000. *Id.*

**¶45** After a Maricopa County Superior Court judge signed orders compelling Tracy and the others to appear in tribal court, they sought special action relief. *Id.* at 26–27, 810 P.2d at 1033–34. After this court declined to accept jurisdiction, the Arizona Supreme Court granted review to address, among other issues, whether the Navajo Nation is a state or territory within the meaning of the Uniform Act, and whether Tracy and the other petitioners would face hardship under A.R.S. § 13-4092(B) because "they [intended to] claim privileges that will not be recognized by the Navajo District Court and hence will risk being jailed unless they 'waive those rights.'" *Id.* at 27, 810 P.2d at 1034.

**¶46** The Arizona Supreme Court concluded after extensive analysis that the Navajo Nation is a qualifying "territory" under the Uniform Act. *Id.* at 27–39, 810 P.2d at 1034–46. The court also addressed Tracy's claim that he would sacrifice his Fifth Amendment privilege against self-incrimination if haled into tribal court because that constitutional provision does not bind Indian tribes. Our supreme court reasoned that "[a] witness cannot circumvent the Uniform Act by claiming his *intent* to assert the privilege [against self-incrimination] before the questions are actually posed in the proceeding to which the privilege will pertain." *Id.* at 27, 810 P.2d at 1034. The court further stated its belief that "when testifying in tribal court, Tracy will enjoy a federally imposed privilege against self-incrimination that is substantially coextensive with the fifth amendment privilege." *Id.* at 41, 810 P.2d at 1048.

**¶47** Finally, the court addressed the other petitioners' assertion that they (lawyers and accountants to the parties involved in the land transaction) should not be required to testify because "the Navajo District Court might not recognize the Arizona statutory privileges for attorney–client and accountant–client relationships." *Id.* at 43 & n.20, 810 P.2d at 1050 & n.20. Citing a Maryland case, *In re Cal. Grand Jury Investigation*, 471 A.2d 1141, 1145 (Md. Ct. Spec. App. 1984), the court stated that, "[q]uite simply, the professional privileges are a matter for the requesting jurisdiction to rule on and are not appropriately addressed to the state court issuing the subpoena." *Tracy*, 168 Ariz. at 43, 810 P.2d at 1050. The court further noted that professional privileges "are not based on any constitutional mandate, [and] the laws of each jurisdiction may appropriately vary," and concluded that "[w]e do not believe that

16

petitioners face any undue hardship by having the Navajo District Court rule on the merits of their privilege arguments at the time the testimony is sought." *Id.* at 43–44, 810 P.2d at 1050–51.[3]

¶48 The majority urges that the above-quoted language from *Tracy* regarding professional privileges encompasses the issues raised in this case. But that discussion only addresses in-court *testimony*, and not the production of documents. *See id.* at 26–27, 810 P.2d at 1033–34. That distinction is important because, if a witness is ordered to appear in court, the witness retains the right and ability to disclose or decline to disclose information, and can choose to invoke a privilege and remain silent, albeit at the risk of being found in contempt. In contrast, if a court orders that documents be disclosed, once the documents are released, the information cannot be recalled, and the holder of a privilege does not have the option of "remaining silent." That distinction is particularly important in this case, where privileged and confidential communications include information from third parties who participated in group therapy sessions with Johnson, and whose confidential communications run the risk of disclosure without any opportunity to assert a right to "remain silent."

¶49 Furthermore, *Tracy*'s holding did not specifically address whether communications that occurred in Arizona are subject to disclosure if the "foreign" jurisdiction's privilege and confidentiality laws differ from Arizona's. Although *Tracy* noted broadly that the "laws [relating to professional privileges] of each jurisdiction may appropriately vary," *id.* at 43, 810 P.2d at 1050, it is not clear whether the communications or activities at issue in that case took place in Arizona (outside of tribal land), and the opinion in fact can be read to suggest that Tracy's conduct took place on the Navajo reservation. *See id.* at 26, 810 P.2d at 1033 ("The Navajo District Court does not have jurisdiction to prosecute non-members of the Navajo tribe, *even for crimes committed in Indian Country*, so Tracy is not the subject of any pending or prospective tribal prosecution." (emphasis added)). Assuming Tracy's conduct took

---

[3] The Arizona Supreme Court also quoted this court's order declining jurisdiction, which noted that, although the Navajo Nation might not have initially been an intended participant in the Uniform Act, "a majority of this court considers the Navajo Tribal Courts to now provide those safeguards and procedures recognized by courts of other states, including the constitutional protection against self-incrimination and the statutory privilege associated with attorney/accountant/client communication." *Tracy*, 168 Ariz. at 27, 810 P.2d at 1034 (citation omitted).

place on the reservation, the Arizona Supreme Court's broad statement regarding professional privileges suggests only that Arizona citizens are not entitled to the protections of Arizona law for activity that occurred on tribal land.

¶50 Unlike *Tracy*, in the instant case, there is no question that the communications at issue took place in Arizona and not in the requesting state (Wisconsin). Accordingly, we are faced with issues not specifically addressed in *Tracy*: does the law of the state in which the communications took place govern whether the communications are privileged or confidential, and if so, which state should determine how to apply that law?

¶51 As to the issue of which state's law governs whether the communications are privileged or confidential, the Maryland case on which the Arizona Supreme Court relied in *Tracy* in its discussion of professional privileges is instructive and compels the conclusion that the site of the communication is dispositive. *See id.* at 43, 810 P.2d at 1050. In *In re California Grand Jury Investigation*, a Maryland court responded to a request from a California court seeking a subpoena to require a Maryland reporter to testify in a California proceeding. 471 A.2d at 1142–43. The Maryland court issued the subpoena after rejecting the reporter's assertion that the Maryland Press Shield Law should be applied to protect from disclosure the reporter's discussions with an informant. *Id.* at 1145. But the Maryland court rejected the reporter's assertion not because the court was willing to defer interpretation of Maryland law to the California court, but rather because the communications at issue took place in California and not in Maryland. *Id.* (holding that the reporter "will have to look to California law for protection, because whatever occurred between [the reporter] and [his source] took place in California, not Maryland"). Applying that same logic here dictates that the law of the jurisdiction in which the communications took place determines whether the communication is privileged and/or confidential.

¶52 Because the law of the jurisdiction where the communications took place governs, courts from that jurisdiction are best situated to address whether the communications are privileged and/or confidential under the law of that jurisdiction. In fact, to leave the analysis to another jurisdiction could lead to inconsistent interpretations and applications of the law of the jurisdiction where the communications took place.

¶53      Here, Arizona courts are the appropriate forum in which to apply and interpret Arizona law governing psychotherapist–patient privilege and confidentiality. Accordingly, the superior court should have reviewed the documents sought by subpoena to determine whether they include privileged and/or confidential information, and if so, whether the documents should be redacted before being sent to the requesting jurisdiction.

¶54      Although my colleagues acknowledge a "weighty" interest in enforcing Arizona's psychologist–client privilege statute, they nevertheless assert that the Arizona Legislature and appellate courts have determined that the need to protect the victims of crime—particularly minor victims of physical or sexual abuse—weighs even more heavily. But to the extent legislative pronouncements regarding privilege and confidentiality issues are seen to conflict with legislative pronouncements under the Uniform Act, the more specific privilege and confidentiality provisions control, rather than the general provisions of the Act. *See Lange v. Lotzer*, 151 Ariz. 260, 261, 727 P.2d 38, 39 (App. 1986). Moreover, the majority's position reads too much into the Legislature's adoption of the Uniform Act, since the Act itself does not require a state to ignore its privilege/confidentiality concerns. And the Act obviously does not change the degree to which victims of crime are protected in cases involving crimes committed in Arizona. The majority points to nothing in the Act or its legislative history that would suggest that the Legislature intended greater protections for victims of crimes committed in other states than for victims of crimes committed in Arizona.

¶55      Requiring the superior court to undertake a privilege/confidentiality review before sending documents to another state would simply ensure that Arizona-specific provisions (as adopted by the Legislature or by Arizona courts) relating to privilege and confidentiality are applied to communications that take place in Arizona. In contrast, the majority's position abrogates the responsibility to interpret Arizona legislative and judicial pronouncements regarding privilege and confidentiality to courts of another state, which may or may not apply Arizona law, and even if the foreign state chooses to apply Arizona law, the foreign state may or may not interpret it in the same way that Arizona courts would interpret it.

¶56      The Wisconsin trial judge who will review the records after they are sent from Arizona has indicated that "the information requested from Arizona, if relevant and compliant with Wisconsin evidentiary rules, is admissible at the trial in this matter." That statement does not indicate,

however, whether Wisconsin evidentiary rules require application of the law of the jurisdiction where communications took place in addressing privilege/confidentiality issues. But regardless whether the Wisconsin court intends to apply Arizona law, and regardless whether Wisconsin law regarding patient/client privilege is substantially similar to Arizona law, in my view, the documents memorializing communications that took place in Arizona are subject to Arizona law, which should be interpreted by Arizona courts.

¶57　　　Furthermore, leaving to a foreign jurisdiction the decision whether and how to apply Arizona privilege and confidentiality concerns places Arizona patients and treating professionals in an untenable position in which there is uncertainty as to what types of communications are protected from disclosure. Patients and treating professionals who engage in communications in Arizona should not be required to know the laws and rules regarding disclosure of confidential information in jurisdictions outside Arizona. *See* Restatement (Second) of Conflict of Laws § 139(2) cmt. d (1971) (courts should consider "fairness to the parties"—particularly reliance on local privilege or strict confidence—in determining whether law of the state where the communication took place should trump forum law). Leaving unanswered the question of what law governs the scope of confidentiality is unfair to patients and treating professionals—and could in fact discourage patients from seeking counseling. *State v. Wilson*, 200 Ariz. 390, 393, ¶ 5, 26 P.3d 1161, 1164 (App. 2001) (noting that a major purpose behind the Arizona Legislature's enactments furthering patient privacy and extending testimonial privileges to written medical records is to "encourag[e] full and frank disclosure of medical history and symptoms by a patient to his doctor").

¶58　　　Finally, there is no inherent unfairness in having an Arizona court review documents relating to Arizona communications for privilege and confidentiality concerns under Arizona law before ordering disclosure of the documents to another jurisdiction. Significantly, the communications at issue would have remained private but for a provision in Arizona law (A.R.S. § 13-3620) that imposes a duty on certain categories of individuals (including mental health professionals) to immediately report to law enforcement instances of child abuse of which they become aware. But that provision does not eliminate other privilege and confidentiality concerns that may require that information in records detailing alleged child abuse be redacted before the records are disseminated or otherwise made public. *See Wilson*, 200 Ariz. at 395, ¶ 11, 26 P.3d at 1166 (declining to carve out a broad "crime–fraud exception" to a defendant's right to assert the physician–patient privilege); *Benton v.*

*Superior Court*, 182 Ariz. 466, 468, 897 P.2d 1352, 1354 (App. 1994) (holding that before medical records may be disclosed without the patient's consent in a criminal case, the court must balance "the public's interest in protecting victims" with "the privacy interest reflected in the physician–patient privilege"). In sum, when Arizona law is used to obtain otherwise confidential information, the parameters set forth under Arizona law for disclosure of that confidential information should also be applied.

**¶59** In my view, the request for disclosure of documents reflecting communications that took place in Arizona should be treated the same as if the request were made by Arizona prosecutors seeking disclosure of documents in an Arizona case. I would thus accept jurisdiction and reverse the superior court's finding that the court is not required to undertake a privilege/confidentiality review before ordering that the documents at issue be disclosed for use in a Wisconsin prosecution.



Ruth A. Willingham · Clerk of the Court
FILED: gsh