¶ 16 Wallace requests his attorney's fees on appeal. Wallace's request for fees is granted, contingent on compliance with Arizona Rule of Civil Appellate Procedure 21.

341 P.3d 466

**AZORE, LLC, an Oregon limited liability company doing business as Sunwest Choice Healthcare and Rehab; Pinnacle Healthcare Management, Inc., an Oregon corporation; Pinnacle Healthcare Inc., an Oregon corporation; Pinnacle Healthcare II, Inc., an Oregon corporation; Terry Granger, Administrator; and Does 1–250, Petitioners,**

v.

**The Honorable Edward BASSETT, Judge of the Maricopa County Superior Court, Respondent Judge,**

**Martha Young, Personal Representative of the Estate of George Young, deceased, on behalf of the Estate of George Young, and Martha Young, personal representative for and on behalf of George Young's statutory beneficiaries pursuant to A.R.S. § 12–612(A), Real Parties in Interest.**

No. 1 CA–SA 14–0212.

Court of Appeals of Arizona, Division 1.

Dec. 18, 2014.

---

The Checkett Law Firm, PLLC by John J. Checkett, Paul J. Sheston, Scottsdale, Broening Oberg Woods & Wilson by Kevin R. Myer, Phoenix, Co–Counsel for Petitioners.

Wilkes & McHugh, PA by Melanie L. Bossie, Frederick A. Rispoli, Phoenix, Counsel for Real Party in Interest.

Judge RANDALL M. HOWE delivered the opinion of the Court, in which Presiding Judge PATRICIA A. OROZCO and Judge MAURICE PORTLEY joined.

### OPINION

HOWE, Judge.

¶1 Azore, LLC, an Oregon company, doing business as Sunwest Choice Healthcare and Rehab; Pinnacle Healthcare Management, Inc., an Oregon corporation; Pinnacle Healthcare II, an Oregon corporation; Terry Granger, administrator; and John Does 1 through 250 (collectively "Sunwest") challenge the trial court's order compelling production of emails, a consultant report, and incident tracking logs associated with its quality assurance committee. Sunwest argues that the documents are privileged under the Federal Nursing Home Reform Amendments (the "Act"), 42 U.S.C. § 1396r.

¶2 After considering the petition for special action, we accepted jurisdiction because Sunwest had no equally plain, speedy, or adequate remedy by appeal, Ariz. R.P. Spec. Act. 1(a), and the issue raised was a purely legal question, one of first impression, and of statewide importance. *See State v. Bernini*, 230 Ariz. 223, 225 ¶5, 282 P.3d 424, 426 (App.2012). Moreover, special action review was appropriate because Sunwest was ordered to disclose what it believed was privileged information. *See Johnson v. O'Connor ex rel. Cnty. of Maricopa*, 235 Ariz. 85, 89 ¶14, 327 P.3d 218, 222 (App.2014). We have granted partial relief and ordered disclosure of the emails and the consultant report because they are not protected by the Act, but not disclosure of the incident tracking logs because they are protected by the Act. Our order indicated that an opinion would follow; this is that opinion.

### FACTS AND PROCEDURAL HISTORY

¶3 George Young was a 75–year–old gentleman residing at Sunwest's nursing facility. In September 2011, he fell while at the facility and died several weeks later. Martha Young, his widow and estate's personal representative, brought claims for wrongful death and violation of the Adult Protective Services Act, A.R.S. § 46–455.

¶4 In September 2014, Young moved to compel production of emails, a consultant report, and incident tracking logs from Sunwest. Specifically, she sought: (1) an email between Sunwest employees Phil Friedlan and Terry Granger, copied to another employee Sharon Beal; (2) an email string between Sunwest employees Stan Magleby and Brian Hart, forwarded to other employees Phil Friedlan, Roger Friedlan, and Terry Granger; (3) a consultant report titled, "Crandall Corporate Dietitians' Quarterly Quality Assurance Report for Long–Term Care"; and (4) incident tracking logs listing incidents at the facility during September 2011, as well as accompanying bar graphs illustrating incidents by day of the week, shift, type, location, severity, and nursing facility unit; and a pie chart illustrating the time and nursing facility unit of each fall at the facility.

¶5 Sunwest responded that the requested documents were privileged under 42 U.S.C. §§ 1396r and 1395(i)(3). The trial court rejected Sunwest's privilege claim and ordered immediate disclosure. Young later moved to compel production again because the documents had not been disclosed. The court ordered production, and in response, Sunwest filed its petition for special action and requested a stay, which we granted.

### DISCUSSION

1. **Waiver**

¶6 We first address Young's contention that Sunwest waived its argument regarding § 1396r by not sufficiently arguing it before the trial court. In Arizona, "legal theories must be presented timely to the trial court so that the court may have an opportunity to address all issues on their merits." *Continental Lighting & Contracting, Inc. v. Premier Grading & Utilities, LLC*, 227 Ariz. 382, 386 ¶12, 258 P.3d 200, 204 (App.2011). If the argument is not raised before the trial court, then it is waived on appeal. *Id.*

¶7 Although we agree that Sunwest did not sufficiently argue § 1396r before the trial court, we will exercise our

discretion, nonetheless, to address the argument. This Court may affirm a trial court's ruling based on grounds that otherwise could be deemed waived by the failure to argue them before that court. *See State v. Kinney*, 225 Ariz. 550, 554 ¶ 7 n. 2, 241 P.3d 914, 918 n. 2 (App.2010) (providing that although appellate courts generally will not address issues not raised before the trial court, we may address waived issues to uphold a trial court's ruling); *State v. Payne*, 223 Ariz. 555, 569 n. 8, 225 P.3d 1131, 1145 n. 8 (App.2009) ("If application of a legal principle, even if not raised before the trial court, would dispose of an action on appeal and correctly explain the law, it is appropriate for us to consider the issue."). "[W]hen we are considering the interpretation and application of statutes, we do not believe we can be limited to the arguments made by the parties if that would cause us to reach an incorrect result." *Evenstad v. State*, 178 Ariz. 578, 582, 875 P.2d 811, 815 (App.1993). Moreover, waiver is a procedural concept that we do not rigidly employ in a mechanical fashion, and we may use our discretion in determining whether to address waived issues. *State v. Boteo–Flores*, 230 Ariz. 551, 553 ¶ 7, 288 P.3d 111, 113 (App.2012). Because we view the § 1396r argument as the correct law to address Sunwest's privilege claim and we are interpreting that statute, we exercise our discretion to address it.

### 2. The Federal Disclosure Restriction, 42 U.S.C. § 1396r

¶ 8 Sunwest argues that the documents are privileged under § 1396r(b)(1)(B) ("the disclosure restriction") because they were generated by or at the behest of its quality assurance committee for quality assurance purposes. The Act applies here because federal law governs all facilities that accept Medicaid or Medicare payments, as Sunwest does. Whether the privilege Sunwest claims applies to the documents is an issue of first impression in Arizona. To the extent that the federal privilege applies, we must decide whether the documents come within its purview. Although we review the trial court's disclosure order for an abuse of discretion, Ariz. R.P. Spec. Act. 3(c), whether and to what extent a privilege exists is a question of law that we review de novo, *Carondelet Health Network v. Miller*, 221 Ariz. 614, 617 ¶ 8, 212 P.3d 952, 955 (App.2009). We also review issues of law involving statutory interpretation de novo. *Magness v. Ariz. Registrar of Contractors*, 234 Ariz. 428, 432 ¶ 15, 323 P.3d 711, 715 (App.2014).

¶ 9 Our primary goal in interpreting a statute is to give effect to legislative intent, looking to the plain language as the best indicator of that intent. *Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383 ¶ 8, 296 P.3d 42, 46 (2013). We strive to give effect to each word or phrase of the statute. *Guzman v. Guzman*, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App.1993). Privilege statutes are strictly construed because "they impede the truth-finding function of the courts." *Carondelet Health*, 221 Ariz. at 616 ¶ 7, 212 P.3d at 954 (internal quotation marks and citation omitted).

¶ 10 The federal statute provides that a nursing facility must have a quality assessment and assurance committee that "meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary" and "develops and implements appropriate plans of action to correct identified quality deficiencies." 42 U.S.C. § 1396r(b)(1)(B). Quality assurance committees are "key internal mechanisms that allow nursing homes opportunities to deal with quality concerns in a confidential manner and can help them sustain a culture of quality improvement." Office of Inspector Gen., *Quality Assurance Committees in Nursing Homes*, DEP'T OF HEALTH & HUMAN SERVICES 2 (2003), https://oig.hhs.gov/oei/reports/oei–01–01–00090.pdf. To promote an effective quality review process for nursing facilities, the statute provides that a state "may not require disclosure of the *records of such committee* except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph." 42 U.S.C. § 1396r(b)(1)(B) (emphasis added).

¶ 11 The statute limits the scope of its disclosure restriction to "records of such committee." 42 U.S.C. § 1396r(b)(1)(B). Courts that have interpreted this restriction agree that the statute applies to "records

generated by" the quality assurance committee, which includes minutes, internal papers, or conclusions of the committee, and used by the committee for quality assurance purposes.[1] *See, e.g., Jewish Home of Eastern PA v. Centers for Medicare & Medicaid Services,* 693 F.3d 359 (3d Cir.2012); *Boone,* 946 S.W.2d at 743; *Jane Doe,* 757 N.Y.S.2d 507, 787 N.E.2d at 618.

¶ 12 The federal statute provides that a state may not require disclosure of the "records of such committee." 42 U.S.C. § 1396r(b)(1)(B). A "record" can mean a "thing constituting a piece of evidence about the past, especially an account of an act or occurrence kept in writing or some other permanent form." *Record Definition,* Oxford Dictionary, http://www.oxford dictionaries.com/us/definition/american_ english/re cord (last visited Dec. 2, 2014). "Of" can mean "expressing the relationship between two entities, typically one of belonging." *Of Definition,* OXFORD DICTIONARY, http://www.oxforddictionaries.com/us/ definition/american_english/of (last visited Dec. 2, 2014). Moreover, reading the statement with the entirety of § 1396r(b)(1)(B) provides that "such committee" refers to the nursing facility's quality assurance committee. Therefore, we interpret "records of" to refer to records generated by the quality assurance committee that belong to it. Logically, "generated by" the committee also includes records created by a committee member at the behest of the committee. Consequently, we hold that the disclosure restriction applies to records generated by the quality assurance committee for quality assurance purposes, which accordingly includes minutes, internal papers, or conclusions of the committee.

### 2a. The Emails and the Consultant Report

■ ¶ 13 We now turn to the documents in question. Sunwest argues that except for

the consultant report, "all of the information at issue was authored, created and generated by members of the Quality Assurance Committee making it automatically privileged." We disagree with that statement with respect to the emails. Although the record shows that Beal and Granger are members of the quality assurance committee, it does not reveal that Magleby, Hart, Phil Friedlan, or Roger Friedlan are members. As such, these individuals' participation in the emails destroyed any potential claim of protection. *See State v. Archibeque,* 223 Ariz. 231, 236 ¶ 18, 221 P.3d 1045, 1050 (App.2009) ("[W]aiver holds that an evidentiary privilege is waived by any 'course of conduct inconsistent with observance of the privilege.'") (citation omitted); *Danielson v. Superior Court,* 157 Ariz. 41, 44–45, 754 P.2d 1145, 1148–49 (App.1987) ("[A] privilege is impliedly waived if the privileged material is voluntarily disclosed by the privilege holder."). Thus, because any privilege under the statute was waived, the disclosure restriction does not apply to the emails.

■ ¶ 14 Second, the disclosure restriction does not protect the consultant report because it would have existed regardless of the quality assurance committee. The report's first page provides that it was "completed for *purposes of corporate compliance* and facility quality assurance" and "will be forwarded to the Quality Assurance Committee" (emphasis added). Thus, the report was created for a "corporate compliance" purpose, and it was forwarded to the committee for quality assurance purposes as a secondary process. We note that the report's language is contrary to other evidence indicating that it was created because of a request from the committee, but "[w]e view the evidence and all reasonable inferences in the light most favorable to sustaining the trial court's ruling."

---

1. Courts are divided, however, on whether the statute extends to records created at the behest of the committee by an outside entity and submitted to it for its review. *E.g., compare State ex rel. Boone Ret. Ctr. v. Hamilton,* 946 S.W.2d 740 (Mo.1997), *with In re Subpoena Duces Tecum to Jane Doe, Esq.,* 99 N.Y.2d 434, 757 N.Y.S.2d 507, 787 N.E.2d 618 (.2003). Although we acknowledge the split in authority, we need not reach

that question. The issue presented to us is limited to whether "record of such committee" includes documents and data generated by the quality assurance committee and used by it for quality assurance purposes. Thus, we do not consider whether the disclosure restriction applies to records created at the behest of the committee by an outside entity and submitted to it for its review.

*Powers v. Guaranty RV, Inc.*, 229 Ariz. 555, 562 ¶ 26, 278 P.3d 333, 340 (App.2012). Consequently, because the report would have existed regardless of the quality assurance committee, it was not generated by the committee, and the disclosure restriction does not protect it.

¶ 15 To support its argument, Sunwest provided its response to Young's motion to compel submitted to the trial court, which argued that Arizona's peer review law governs the extent that the federal privilege applies. But that document does not strengthen Sunwest's position. Arizona's peer review law is a separate body of law and applies to "licensed hospital or outpatient surgical center," not nursing facilities. *See* A.R.S. §§ 36–445, –445.01. Therefore, consistent with our holding, because the report would have existed regardless of the quality assurance committee, the privilege does not attach. Consequently, the trial court did not err in ordering disclosure of the emails and the consultant report.

### 2b. The Incident Tracking Logs

■ ¶ 16 Finally, the disclosure restriction does protect the incident tracking logs, however, because the quality assurance committee generated these records. As an initial matter, federal law requires that nursing facilities submit to the Center for Medicare & Medicaid Services ("CMS") clinical data on every active resident, known as the Minimum Data Set ("MDS"). *See* CMS, *Long Term Care Minimum Data Set (MDS)*, CMS.gov, http://www.cms.gov/ResearchStatistics-Data-and-Systems/Files-for-Order/Identifiable DataFiles/LongTermCareMinimumDataSet MDS.html (last modified Feb. 27, 2012, 5:27 PM). The MDS includes items that measure active residents' physical, psychological, and psychosocial functioning. *Id.* The CMS also has a database for surveys and certification information, known as Certification and Survey Provider Enhanced Reporting, which produces outcome-based quality improvements reports and outcome-based quality monitoring reports. *See* CMS, *OASIS OBQI*, *CMS.gov*, http://www.cms.gov/Medicare/Quality–Initiatives–Patient–AssessmentInstruments/HomeHealthQuality

Inits/HHQIOASISOBQI.html (last modified Nov. 14, 2014, 2:10 PM); CMS, *OASIS OBQM*, CMS.gov, http://www.cms.gov/Medicare/Quality–Initiatives–Patient–AssessmentInstruments/HomeHealthQuality Inits/HHQIOASISOBQM.html (last modified Nov. 14, 2014, 2:19 PM).

¶ 17 Thus, generally, because nursing facilities must submit certain clinical data to the CMS by federal mandate, a record or report that contain these clinical data, even though a quality assurance committee has reviewed it, is not entitled to protection. *See* 42 U.S.C. 1396r(b)(1)(B); *Jane Doe*, 757 N.Y.S.2d 507, 787 N.E.2d at 622 ("Where facilities are compelled ... to maintain a particular record or report that is not expressly related to quality assurance, the fact that a quality assurance committee reviews such information for quality assurance purposes does not change the essential purpose of the document."). The exception to this general rule is when the clinical data is compiled, combined, manipulated, or sorted with other information. The resulting end product is accordingly a record generated by the quality assurance committee. If such a record is used for quality assurance purposes, then the privilege attaches.

¶ 18 Here, upon review of the incident tracking logs and comparing the information contained therein to the federally required clinical data, our conclusion is that the table is a mixture of the clinical data and other information not disclosed to any federal or state agency and the accompany charts are composed of information not disclosed to any agency. *See* CMS, *Quality Measures*, CMS. gov, http://www.cms.gov/Medicare/Quality–Initiatives–Patient–AssessmentInstruments/ NursingHomeQualityInits/NHQIQuality Measures.html (last modified Mar. 28, 2014, 9:27 AM) (providing the nursing facility quality measures that must be reported to CMS). Specifically, the table included clinical data that Sunwest had to submit to the CMS—which it did and which it has already disclosed—and those clinical data are not entitled to protection. But the table and charts combine the clinical data with days of the week, work shifts, type of incidents, location at the facility, the incident's severity, and the

nursing facility unit—none of which are related to the "physical, psychological, and psychosocial functioning" of Sunwest's residents—and therefore the table and charts are entitled to protection. CMS did not require Sunwest to submit any of the non-clinical data information to it. Sunwest was also not required to produce the charts illustrating the incidents by day of week, shift, type, location, severity, and facility unit to any federal or state agency. Our search has revealed no federal or state rules or regulations that require a nursing facility to disclose such information in such forms. *See generally* 42 U.S.C. §§ 1396 to 1396w–5; Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, 101 Stat. 1330; 42 C.F.R. §§ 400 to 498; A.R.S. §§ 36–446 to –446.13, –447.01 to –447.02; Ariz. Admin. Code § R9–10–404.[2]

¶ 19 Therefore, although Sunwest was required to disclose records that were in the form of clinical data previously disclosed under federal or state law to a public entity, it was not required to disclose these records when they were combined with other information, manipulated with that added information, and sorted in various forms—all of which was not required by federal or state law—to be used by its quality assurance committee for quality assurance purposes. Such records that Sunwest's quality assurance committee generated are accordingly "records of such committee." Thus, because the quality assurance committee generated the incident tracking logs, the privilege attached. Consequently, the trial court erred in ordering the disclosure of the incident tracking logs.

## CONCLUSION

¶ 20 For the foregoing reasons, we accepted jurisdiction and granted relief in part.

2. Specifically, Arizona regulations require that a nursing care institution establish, document, and implement a plan for ongoing quality management that includes *methods* to (1) identify, document, and evaluate incidents; (2) collect data to evaluate services provided to residents; (3) evaluate the data collected to identify a concern about the delivery of services related to resident care; and (4) make changes or take action as a result of the identification of a concern about the

We have previously lifted the stay that was entered.

delivery of services related to resident care; as well as include the frequency of submitting a documented report to the Department of Human Services. Ariz. Admin. Code § R9–10–404 (emphasis added). The report must include an identification of each concern about the delivery of services related to resident care and any change made or action taken as a result of the identification of a concern. *Id.*